## CONTINUATION OF APPLICATION FOR A SEARCH WARRANT

I, Special Agent Mallorie Campbell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Continuation in support of an application for a search warrant authorizing the collection of a Deoxyribonucleic Acid ("DNA") sample for Kenneth D. Malory II (Kenneth) and the collection of a DNA sample for Arrontikif Malory (Arrontikif) more fully described in Attachments A, by collecting oral (buccal) swab samples according to the standard practices and procedures employed by the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") for DNA testing as described in Attachment B. This Continuation is made in support of an application for a search warrant under Federal Rule of Criminal Procedure 41.

2. Based on the information set forth below, there is probable cause to believe that Kenneth and Arrontikif violated 18 U.S.C. § 922(g)(1), (Felon in Possession of a Firearm and Ammunition) on or about November 3, 2025, in Kalamazoo County, Michigan. There is probable cause to believe that DNA gathered via buccal swabs will provide additional evidence as to the commission of these crimes.

3. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF"), and have been since December of 2021. I am currently assigned to the Detroit Field Division, Grand Rapids Field Office. I am also a participating member of the City of Kalamazoo Department of Public Safety ("KDPS") Crime Reduction Team ("CRT"). I have had extensive training at the Federal Law Enforcement Training Center in both the Criminal Investigator Training Program and ATF Special Agent Basic Training.

4. Prior to becoming a Special Agent with ATF, I was employed as a Sheriff's Deputy with the Jefferson County Sheriff's Office in Louisville, Kentucky, for approximately eight years. While with the Jefferson County Sheriff's Office, I was assigned to the Federal Bureau of Investigation's Louisville, Kentucky, White Collar Crimes Task Force for approximately four years. As an FBI Task Force Officer and as a Special Agent with the ATF, I have participated in numerous state and federal investigations to include, among others, theft from Federal Firearms Licensees ("FFLs"), other firearms investigations, financial crimes, healthcare fraud, illegal narcotics investigations, gang investigations, and human trafficking investigations.

5.   The statements in this Continuation come from my personal observations, my training and experience, my review of relevant records related to this investigation, and information obtained from other agents and witnesses. This Continuation is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

6.   Based on my training and experience and the facts set forth in this continuation, there is probable cause to believe the requested DNA samples will yield evidence that Kenneth and Arrontikif engaged in the aforementioned federal crime.

## PROBABLE CAUSE

7.   On November 3, 2025, the KDPS, CRT Investigators conducted a directed patrol at the Bronco Liquor party store, 5034 West KL Avenue, Kalamazoo, Michigan. The mission of this directed patrol was to address gun violence in the area after recent incidents involving gun fire. While stationary at this location, CRT observed Kenneth in the area, armed with a handgun, as described below.

8.   Sgt. Boglitsch of CRT observed Kenneth seated in the front passenger seat of a dark grey Dodge Ram Pickup truck parked in front of the Bronco Liquor. Sgt. Boglitsch recognized Kenneth as an individual known to CRT and KDPS. CRT had recently received information that Kenneth was selling marijuana, armed with a handgun.

9.   Sgt. Boglitsch continued surveillance of Kenneth in the Bronco Liquor parking lot. On four separate occasions, Sgt. Boglitsch observed pedestrians approach and contact Kenneth at the front passenger door. Each time Kenneth responded to them by manipulating something toward the floorboard of the vehicle and then opening the door of the vehicle and engaging in hand-to-hand contact at the vehicle side. This was suspected by investigators as drug related contacts.

10.  Sgt. Boglitsch also observed another male loitering in the parking lot with Kenneth, later identified as Arrontikif Malory. Sgt. Boglitsch observed Arrontikif coming and going between the Dodge Ram and a black Lincoln MKX.

11.  During continued surveillance, Sgt. Boglitsch observed Kenneth exit the front passenger seat of the Dodge Ram and walk into the Bronco Liquor Party Store only to return to the vehicle moments later. While Kenneth came and went from the liquor store, Sgt. Boglitsch observed a firearm protruding from his waistline under his thin tee-shirt. From his training and experience,

2

Sgt. Boglitsch is familiar with the hard straight-line imprint that a firearm, specifically a firearm with an extended magazine makes underneath clothing. Video surveillance later obtained from the Bronco Liquor Party Store confirmed Sgt. Boglitsch's observation that Kenneth Malory was carrying a firearm.

12. Arrontikif exited the rear passenger seat of the Dodge Ram at the same time as Kenneth. Arrontikif walked to the Lincoln MKX and sat in the driver's seat for approximately thirteen minutes. The Dodge Ram then pulled up closer to the Lincoln MKX, Arrontikif exited the Lincoln with what appeared to be an open bottle of liquor and got into the rear passenger seat of the Ram. The Dodge Ram then prepared to depart the liquor store.

13. CRT Investigators conducted a felony stop on the Dodge Ram in the Bronco Liquor parking lot. While making contact with the occupants of the Dodge Ram Investigators ordered the occupants not to move and show their hands. Investigators observed the rear seat passenger (Arrontikif) reach toward his waistline and hunch over toward the floorboard. Arrontikif was ordered to stop reaching. He continued his efforts for a moment before becoming compliant again.

14. After the occupants were detained, CRT investigators searched the Dodge Ram. They located a firearm immediately next to where Kenneth had been seated. It was a Glock 22, 40 caliber pistol, with an extended magazine in the front passenger door panel. The Glock was loaded with a round chambered, ready to fire. There were 21 rounds inside of the firearm. The Glock handgun had a red rear striker plate with an image of a skull. Kenneth was the front seat passenger. Investigators located a large distribution size bag of marijuana on the dashboard in front of where Kenneth had been sitting. On the floorboard in front of Kenneth, Investigators located a black tool bag with additional marijuana, electronic scales, measuring items and packaging materials. This was consistent with where Sgt. Boglitsch observed Kenneth reaching to conduct the suspected hand-to-hand drug deals.

15. On the rear passenger floorboard of the Dodge Ram, Investigators located a black Smith & Wesson, M&P Shield, 40 caliber pistol. This was where Arrontikif was observed by police reaching toward the floorboard. The Smith & Wesson handgun was loaded with five rounds in the magazine.

16. Investigators searched the Lincoln MKX registered to Arrontikif. Inside of a Reebok backpack placed on the floorboard just behind the center console they located two additional

magazines for the Smith & Wesson pistol Arrontikif had placed on the floorboard of the Dodge Ram. The magazines were loaded with 40 caliber ammunition.

17.     SA Mallorie Campbell conducted a law enforcement computer check of Kenneth and found him to be convicted of the below listed felony offenses:

      a. 2016: 9th Circuit Court, Count 1: Felony-Armed robbery, Count 2: Felony- Weapons, Felony Firearm

18.     SA Campbell conducted a law enforcement computer check of Arrontikif and found him to be convicted of the below listed felony offenses:

      a. 1997: 9th Circuit Court, Felony- Unarmed Robbery
      b. 1998: 9th Circuit Court, Felony- Assault with Intent to do Great Bodily Harm Less than Murder
      c. 1999: 9th Circuit Court, Felony- Controlled Substance- Imitation, Manufacture or Distribution
      d. 2012: 9th Circuit Court, Count 1: Felony Weapons- Firearms- Possession by Felon, Count 2: Felony Weapons- Felony Firearm, Count 3: Felony Assault with a Dangerous Weapon, Count 4: Felony Weapons- Felony Firearm
      e. 2018: 36th Circuit Court, Count 2: Felony Weapons- Firearms- Possession by Felon, Count 5: Felony Weapons- Felony Firearm

19.     On November 5, 2025, SA Campbell spoke with SA Tim Hunt who is recognized by the ATF as having expertise in the interstate nexus of firearms. Based on the information provided and without physically inspecting the firearms, SA Hunt determined the Glock 22, 40 caliber pistol, and the Smith & Wesson, M&P Sheild, 40 caliber pistol meet the definition of a firearm as defined in 18 U.S.C. § 921(a)(3) and were manufactured outside the State of Michigan.

20.     The firearms were submitted to the KDPS laboratory and were swabbed for DNA before they were test fired. Investigators will compare DNA of Kenneth and Arrontikif obtained under the authority of this search warrant to DNA collected from the aforementioned firearms.

21.     Kenneth is currently in custody at the Newaygo County Jail. Arrontikif is currently on bond and residing at 838 Lane Blvd, Kalamazoo, Michigan.

## DNA TESTING AND THE COLLECTION OF DNA SAMPLES

22.     Based on my training and experience, including discussions with other law enforcement officers, I know that there are two sources of DNA used in forensic analyses. Nuclear DNA (nDNA) is typically analyzed in evidence containing blood, saliva, body tissue, and hairs that have tissue at their ends. Mitochondrial DNA (mDNA) is typically analyzed in evidence containing

naturally shed hairs and hair fragments. When DNA evidence is transferred by direct or secondary (indirect) means, it remains on surfaces by absorption or adherence. In general, liquid biological evidence is absorbed into surfaces and solid biological evidence adheres to an object. Current DNA tests are so sensitive that they can type the DNA found in samples containing only a few cells. Merely touching an object may leave enough DNA material that a forensic analysis will be able to match the object to the person who touched it.

23. Buccal swabs provide the least invasive way to conduct DNA testing. A buccal swab is a cotton-tipped applicator that will be used to collect cheek cells from inside a person's mouth. The lab will then extract a person's DNA profile from the buccal swab, which will then be used for comparison purposes to the profile(s), if any, ultimately extracted from swabs collected from other evidence.

24. I propose to take the DNA samples sought herein in an entirely non-intrusive manner. Specifically, I seek to take "buccal," or cheek, swabs from the inside of the mouth of Kenneth and Arrontikif by using cotton-tipped applicators (similar to a Q-tip) to rub the inside of the cheek of Kenneth and Arrontikif. The buccal swabs take moments, involve no risk to health, "no risk, trauma, or pain," and may be conducted at the Newaygo County Jail or any secure location of Arrontikif's/Arrontikif's defense counsels choosing.

25. I have been informed by the United States Attorney's Office that it is well settled that the Fifth Amendment privilege against self-incrimination does not preclude the use of one's body as evidence. *Schmerber v. California*, 384 U.S. 757, 765 (1985); *Wilson v. Collins*, 517 F.3d 421, 431 (6th Cir. 2008); *Mcveigh v. Smith*, 872 F.2d 725, 727-28 (6th Cir. 1989). I have also been informed that procedures such as these do not implicate the Sixth Amendment. *See, e.g., McVeigh*, 872 F.2d at 727.

26. Investigators will compare the DNA of Kenneth and Arrontikif obtained under the authority of this search warrant to any DNA obtained collected by KDPS from Glock and Smith & Wesson pistols.

## CONCLUSION

27. I submit that there is probable cause to issue the requested warrant. Based on these facts, I have probable cause to believe that a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm took place on or about November 3, 2025, and a DNA sample from Kenneth and Arrontikif will yield evidence of their involvement in those offenses.